Scott E. Davis, Esq.
State Bar No. 016160
Scott E. Davis, P.C.
8360 E. Raintree Drive, Suite 140
Scottsdale, AZ 85260

Telephone:    (602) 482-4300
Facsimile:    (602) 569-9720
email: davis@scottdavispc.com

*Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| THOMAS REDD,<br><br>                    Plaintiff,<br><br>          vs.<br><br>MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY,<br><br>                    Defendant. | Case No.:<br><br>COMPLAINT AND JURY REQUEST<br><br>1) Breach of Contract<br>2) Breach of the Duty of Good Faith and Fair Dealing |

Plaintiff, THOMAS REDD (hereinafter "Redd" or "Plaintiff"), by and through undersigned counsel, hereby files his Complaint and alleges as follows:

## GENERAL ALLEGATIONS

## <u>PARTIES</u>

1.      The Plaintiff, Thomas Redd, is an individual who was a resident of Scottsdale, Arizona and a citizen of the State of Arizona at all times relevant hereto, although he currently resides in and is a citizen of the State of Michigan.

2.      The Defendant, Massachusetts Mutual Life Insurance Company, is an insurance company existing under the laws of the State of Massachusetts, having a principal place of business at 1295 State Street, Springfield, Massachusetts, and is therefore a citizen of the State of Massachusetts.

## JURISDICTION AND VENUE

3.      Plaintiff and Defendant were and are citizens of diverse states.

4.      This action involves an amount in controversy exceeding seventy-five thousand dollars ($75,000.00), exclusive of interest and costs; and jurisdiction is therefore based on diversity of citizenship, 28 U.S.C. § 1332.

## FACTS COMMON TO ALL COUNTS

### A.      *Information about MassMutual*

5.      Massachusetts Mutual Life Insurance Company ("MassMutual") (hereinafter referred to as "Defendant"), is a financial services company that underwrites and administers disability income insurance for professionals and executives.

6.      Defendant does business throughout the United States and in the State of Arizona.

### B.      *Information Regarding Plaintiff's Disability and Defendant's insurance policy*

7.      Plaintiff, who was born in 1958, is currently 60 years old.   Prior to September 20, 2016, Plaintiff was in general good health and was successfully employed on a full-time basis as Vice President, Global Strategic Communications, Retail, for SAP Labs LLC.

8.     In 2016, Plaintiff was offered the opportunity to purchase individual supplemental disability income insurance directly from Defendant, which was intended to supplement his group long-term disability insurance underwritten by Aetna Life Insurance Company for the benefit of employees of SAP.

9.     Responding to that offer, on September 20, 2016, Plaintiff submitted an application to Defendant from his home in Scottsdale, Arizona for individual disability income insurance in the monthly amount of $3,600, payable to age 65 following a 180-day elimination period.

10.     Following receipt of Plaintiff's application, on November 1, 2016, Defendant issued and delivered policy 8,828,942 ("Policy") to Plaintiff in Arizona; and Plaintiff paid premiums of over $2,000 per year to maintain coverage in full force and effect.  A true and accurate copy of the Policy (with date of birth and Social Security number redacted) is attached hereto and by this reference is incorporated herein as Exhibit "A."

11.     Defendant has explicitly represented to Plaintiff that his coverage would not fall within the scope of or be deemed an employee welfare benefit plan governed by the Employee Retirement Income Security Act (ERISA).

12.     On or about June 2, 2017, the Policy was in full force and effect in consideration of premiums paid to date by Plaintiff.

13.     Plaintiff ceased working after June 2, 2017 on account of a severe cognitive impairment that developed after he suffered a stroke on January 13, 2017.

14.     After he stopped working, Plaintiff concurrently applied for leave under the Family and Medical Leave Act and for both short-term and long-term disability benefits from both his group disability insurer, Aetna, as well as from Defendant from his home in Scottsdale, Arizona.  After investigating his claim and evaluating his proof of loss, Aetna approved claims for both short-term and long-term disability commencing on June 5, 2017; and Plaintiff's long-term disability benefits are currently being paid by Aetna. However, Defendant refused to pay Plaintiff any benefits and denied his claim.

15.     Since he ceased working, Plaintiff has continuously met the Policy's definition of "TOTAL DISABILITY OR TOTALLY DISABLED," which the Policy states to mean: "The occurrence of a condition caused by a Sickness or Injury, in which the Insured cannot perform the main duties of his/her Occupation and the Insured is not working at any occupation.  The Insured must be under a Doctor's Care.  The Disability must begin while this Policy is in Force."

16.     Defendant refused to pay benefits based on its assertion of the applicability of the Policy's "3/12 Pre-Existing Condition Limitation Endorsement."  That provision defines a "Pre-Existing Condition" as "A condition for which the Insured:

Received medical treatment, consultation, care or services including diagnostic measures, or took prescribed drugs or medicines in the 3 months immediately prior to the Coverage Date(s) or the date the reinstatement becomes Effective; or

Has symptoms that would have caused an ordinarily prudent person to consult a health care provider in the 3 months immediately prior to the Coverage Date(s) or date the reinstatement becomes Effective."

17.     Contrary to the Defendant's assertion that Plaintiff's disability is due to a

pre-existing condition, Plaintiff neither received medical treatment, consultation, care or services including diagnostic measures, or took prescribed drugs or medicines for a disabling condition in the 3 months prior to the date his individual disability income coverage with Defendant became effective.  Nor did Plaintiff experience any symptoms that would have caused an ordinarily prudent person to consult a health care provider in the 3 months prior to the Coverage date.

18.    Although Defendant invited Plaintiff to appeal its determination, Defendant refused to provide Plaintiff with any documentation that it purportedly relied on as the basis for its determination, thus rendering any appeal of Defendant's determination futile and pointless.

19.    This lawsuit follows Plaintiff's written demands for access to claim documentation and for payment of benefits, which Defendant refused.

## COUNT I

## BREACH OF CONTRACT

20.    Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs and incorporates the same herein by this reference.

21.    Because the Policy was in full force and effect on the date Plaintiff became disabled; and Plaintiff met the Policy's definition of "TOTAL DISABILITY" and his disability was not excluded, there is due and owing to him the sum of $3,600 per month for each month since the expiration of the elimination period, with benefits thus accruing and due since December 2, 2017.

22.     Defendant breached the terms and conditions of the Policy by refusing to pay Plaintiff benefits accruing and due as of December 2, 2017 or thereafter.

23.     As a direct and proximate result of the Defendant's breach of contract under the insurance policy, Defendant caused Plaintiff to suffer damages.

## COUNT II

## BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

24.     Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs and incorporates the same herein by this reference.

25.     The Policy contained an implied covenant of good faith and fair dealing which Defendant unreasonably breached by engaging in one or more of the following actions/inactions which included, but are not limited to, the following:

- **UNREASONABLY** took the position that Plaintiff had a pre-existing condition as defined in the Policy contrary to the evidence and factual timeline;

- **UNREASONABLY** failed to investigate the facts and circumstances of the origin of Plaintiff's disability;

- **UNREASONABLY** mischaracterized and misstated evidence in order to reach an outcome which focused on finding a basis to deny Plaintiff's benefits;

- **UNREASONABLY** failed to give appropriate weight to the opinions of Plaintiff's treating doctors.

- **UNREASONABLY** misrepresented pertinent facts or policy or contract provisions relating to coverages at issue, such as contending Plaintiff's claim was excluded based on a pre-existing condition.

- **UNREASONABLY** in all aspects of investigating or evaluating Plaintiff's claims for benefits under his policy of disability insurance, Defendant's failed to give

Plaintiff's interest at least as much consideration as their own and instead elevated their interests above that of Plaintiff.

- **UNREASONABLY** refused to provide Plaintiff with documentation that established the basis of Defendant's benefit determination so that Plaintiff could respond thereto other than by filing a lawsuit.

- **UNREASONABLY** failed and refused to pay benefits due to Plaintiff under the terms of the Policy.

26.    As a direct and proximate result of the aforementioned unreasonable conduct of Defendant, Plaintiff has suffered, and will continue to suffer in the future, damages under the Policy, plus interest, and other economic and consequential damages, for a total amount to be proven at the time of trial.

27.    As a further direct and proximate result of the aforementioned unreasonable conduct of Defendant, Plaintiff has suffered anxiety, worry, mental and emotional distress, all to Plaintiff's general damage in a sum to be determined at the time of trial.

28.    As a further direct and proximate result of the unreasonable conduct of Defendant, Plaintiff was compelled to retain legal counsel and initiate litigation in order to obtain the benefits due under the Policy. Therefore, Defendant is liable to Plaintiff for those attorneys' fees, witness fees and costs of litigation reasonably necessary and incurred by Plaintiff in order to obtain the Policy's benefits in a sum to be determined at the time of trial.

29.    Defendant engaged in these improper acts specifically knowing that Plaintiff was financially and emotionally vulnerable and consciously pursued a course of conduct disregarding the substantial risk of significant harm to Plaintiff.

30.    Defendant's conduct described herein was intended by Defendant to cause injury to Plaintiff or was despicable conduct carried on by the Defendant with a willful

and conscious disregard of and indifference to the rights of Plaintiff, or subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights, or was an intentional misrepresentation, deceit, or concealment of material facts known to the Defendant with the intention to deprive Plaintiff of property, legal rights, or to otherwise cause injury, such as to constitute malice, oppression or fraud, thereby entitling Plaintiff to punitive damages in an amount appropriate to punish or set an example of Defendant.

31.     Defendant's conduct was highly reprehensible because it either (1) caused Plaintiff not only substantial economic loss, but also personal physical injury and physical and emotional sickness; (2) demonstrated Defendant's indifference and reckless disregard as to the health and safety of Plaintiff; (3) was repeated and continuous, rather than just an isolated incident; (4) caused harm to Plaintiff not by accident, but rather by Defendant's intentional malice, trickery, and deceit; and (5) Plaintiff was financially vulnerable to Defendant's conduct due to the depleted state of his health and well-being.

32.     Defendant denied Plaintiff's benefits knowing that Plaintiff's claim was valid and payable.

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

33.     a. An award of all past due benefits under the policy and unwaived premium payments from December 2, 2017 through trial in an amount to be determined according to proof inclusive of interest thereon as provided by law.

b. An award of future damages based on the value of benefits Plaintiff would have received for the maximum time frame set forth in the Policy pursuant to contract as damages for Defendants' tortious breach of the obligation of good faith and fair dealing and unjustified repudiation of its contractual obligations; all as previously set forth herein;

c. An award of past, present, and future damages for physical suffering,

emotional distress, humiliation, inconvenience and anxiety as a result of Defendant's tortious breach of the obligation of good faith and fair dealing; as previously set forth herein;

d. An award of punitive damages sufficient to punish the Defendant and to deter it and similarly situated defendants from engaging in similar conduct in the future, commensurate with the reprehensibility of Defendant's conduct as provided by law;

e. For reasonable attorneys' fees pursuant to A.R.S. §12-341.01, witness fees and costs of litigation incurred by Plaintiff to obtain the Policy's benefits in an amount to be determined at the time of trial;

f. For costs of suit incurred herein; and,

g. For such other and further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED, this 3rd day of April, 2018.

## REQUEST FOR JURY TRIAL

34.    Plaintiff hereby requests a trial by jury on all triable issues.

SCOTT E. DAVIS, P.C.

*/s/ Scott E. Davis*
SCOTT E. DAVIS
Attorney for Plaintiff


*Of Counsel (Pending Pro Hac Vice Admission)*

Mark D. DeBofsky
Illinois A.R.D.C. No. 3127892
DeBofsky, Sherman & Casciari, P.C.
200 W. Madison St., Suite 2670
Chicago, Illinois 60606

(312) 561-4040
FAX (312) 929-0309
mdebofsky@debofsky.com